Thank you, your honor. Mr. Trusoto. Your honor, I believe that Mr. Johnston will be going first. Yes, Mr. Johnston is going first. I'm sorry. I'd be happy to let the government go first, but this is Mr. Romero's appeal, your honor. So, yes, um again, Tripp Johnston on behalf of Mr. Romero with an O in this case. We're here today after over a hundred pages of briefing by myself and the government in a case that should have been straightforward, a straightforward case of transportation of undocumented people, specifically the two people who got into Mr. Romero's car on April 24th, the charges that he has not challenged on appeal, the transportation counts concerning those two individuals, or the conspiracy that would encompass his agreement to do that. But we are here today because rather than take the bird in hand, the slam-dunk case, the government chose to parse out the events of this night into 11 separate counts that upon scrutiny caused concern and I think warrants some form of relief for Mr. Romero. Yes. Can I ask you an upfront practical question, then I want you to continue it, but one of the 11 counts, the conspiracy count, you're not challenging at all, is that right? That's correct, your honor. And Mr. Romero is is he out now? Because the briefing is a little delayed for him, but it said he was going to get out in August or something like that.  As we said, his projected release date was in August and when I last checked, it appears he's been released. So the odd thing from my perspective on this is, you know, and his sentences were all current, so I remember seeing the brief about, well, yeah, but there's, you know, $1,100 versus $100 at stake. But it seems kind of odd because if, is it possible that if we granted relief in this case that the government could retry him on some of these and he ends up actually significantly worse off? Sure, he saved some money, but he ends up getting sentenced, you know, getting re-convicted on these other things and ends up spending more time in prison? Is that possible? Or what is the reason why, I'm just confused as to why you're feeling this, normally we don't see a case like this, that it seems like there's a little bit of risk here and I'm just trying to figure out the facts, but what's going on? Is it a problem with if he has more, if he's convicted of more than one thing, that somehow affects something? Well, I think as this court has said in Salapa, which considered a remand in a case where an individual got concurrent sentences, but did suffer increased fines or penalties for special assessments, that it's, concurrent sentences can have significant, quote, collateral consequences that we cannot foretell at the time of the decision. I can't tell the court today exactly what those concerns would be if the court were to give him relief on some felonies, but this is an indigent defendant. There were $1,100 in special assessments when under My World is presented to this court, it would have been significantly less, if not $100. So there is some benefit to Mr. Romero and, you know, to my knowledge... Let's say we got rid of all of those 10. Is there a way that he could be retried? I'm not saying, I don't know what the government would or wouldn't, but could he be retried on any of those? It's hard to say, Your Honor. I know he was undocumented at the time of the offense, he was deported, even if they retried him, would he get consecutive sentences as opposed to concurrent? That's far too speculative for me at this point to respond. But I am concerned about how the government pursued the case and in the theories of liability that I think the court should take concern from. And, you know, I can start with some of the theories such as aiding and abetting of the people who never even got into his car to show how far afield we are in this case from evidence that would be sufficient to support such a conviction. Can I ask you something about the unanimity instruction piece of this? That with regard, does it make a difference to you that there were individual jury instructions for the elements of the attempted crimes different from the completed crimes? Does that make any difference? I don't think that helps because the unanimity instruction is given and we're talking about the specific unanimity instruction as they gave for the conspiracy to ensure that the jurors agreed on a particular offense. And so the fact that both sets of instructions were given, six jurors, eleven jurors could have agreed on one theory and one on the other, so I don't know that that necessarily would help the government in their argument on that. Although if there if there are individual instructions for the attempt crime and the completed crime, which says in order to find if any guilty, you must find these elements coupled with jury instruction 35, which is your verdict, whether guilty or not, must be unanimous. Why is it better not to overcome a Sixth Amendment unanimity problem? Well, I don't want to call it the wrong thing, not an augmented, but a more specific unanimity instruction for the conspiracy because they had charged multiple conspiracies. Yeah, augmented. You simply can't know if the jury unanimously determined one crime or the other. I don't think the general unanimity instruction is sufficient. If it was, we wouldn't have cases like Ramirez-Lopez that say you need an augmented instruction. Although in this case, you didn't object to the instructions or the duplicity early on. So who bears the burden to show that there was a substantial miscarriage of justice? That would be the defense, Your Honor, or the appellant here. I was not trial counsel. There was not an objection made. And frankly, that is a weakness in that argument. What I do think is more problematic, though, is the government's use of Pinkerton liability in order to justify the convictions on all the other substantive counts. They have divided, in my opinion, what is a transportation count case into transporting and harboring individuals. Three of the people who never even got into Mr. Ramirez's car, they attempt to justify that he somehow aided and abetted the harboring of those people in the other individual's car. They don't suggest that he had any idea that anyone was doing anything in that other car to harbor them. I think if we step back even one more step, there's problems with this circuit's case law, both the Lopez-Zambonk decision as well as Sanchez-Vargas that preceded it, and that Lopez endorsed that when we break up a singular event like the transportation that occurred in this case into harboring and transport, we're going against Congress's intent. But my concern is, even if you agree with me, that the harboring counts can't be sustained for the two people who got into Mr. Ramirez's car, and that the harboring and transportation counts can't be sustained under the the aiding and abetting theory that the government has proposed for these people who Mr. Ramirez, the record doesn't even demonstrate that he knew they existed or that they were even in this other car. The government nevertheless says that Mr. Romero should be held accountable under Pinkerton liability. And I think that that's a troubling path to pursue if the court were to affirm the convictions on that theory. In particular, I think we have to look at what the test is. Pinkerton liability is supposed to be broad-ranging. It's more cast a wider net than aiding and abetting, but it does have its limitations. And the first limitation is an important one in this case. What was the scope of the conspiracy? The government has suggested that Mr. Romero should be held liable with felony conviction because of actions that another driver in another car at another time may have done to tell people in her car to duck their heads or to move seats in the car. That's their theory of harboring beyond simply the transportation in this case. They want to hold Mr. Counsel, let me ask you, don't they meet at about 11 o'clock at night in a parking lot? There are two cars. The defendant admits later that he drives undocumented immigrants. Is it isn't the scenario one pretty obvious that the defendant understands there are other people involved and what they're all doing? Well, it would be significant if he understood there were other people involved. Or if as part of the scope of his agreement, he did something to assist his co-conspirators in furthering the entry or the harboring or the concealing of these other people. What's problematic in this case is that that doesn't exist. If we look at the scope of the agreement, Mr. Romero had, whether we look at the indictment or the evidence in the case, he simply agreed that he would meet at a location and that he would transport individuals and that he would get paid to do it. The government says, interestingly, the cases the government cites to say that that's sufficient for for Pinkerton liability, I think, show the nuance that's required when we're dealing with such a powerful theory of liability. Yes, you could. Didn't he also pay over with a five hundred eighty two hundred dollars or something like that the time before the transfer took place? That yeah, that's that that's what the government argued at trial was that he. Well, I mean, well, was there evidence of that? Well, I think the evidence and I can't recall exactly whether Mr. Romero acknowledged that in his statement. Simply for the government, I think just clouds the picture. There was a potential theory at trial that he was paying to have people, you know, brought to him. I think the ultimate evidence was that he said he was getting paid to pick up these people, I think, which is a primary reason why we're not challenging his transport conviction. But if I'm missing something, I don't know how that would help the government. Just asking. OK, thanks. You had some sentencing issues. Did you want to address them as well? Yes, your honor. I mean, the first one is the multiple sentence issue, I think, which was was referencing Judge Van Dyke's questions regarding special assessments. I think that the case law is clear that for 1324 alien smuggling convictions, Sanchez Vargas would require a remand for resentencing to vacate the judgments of at least some of the counts in this case. I've argued that this is a singular occurrence. Arguably, there's the the two instances of transport of Mr. the people who actually got into Mr. Romero's car, but the court would resentence and he would benefit, you know. Concretely, practically by the special assessment. The other sentencing issue concerned on the upward adjustment by the court for obstruction of justice. I've argued that any belief that Mr. Romero had that these people were his cousins or any effort to testify that they were knowing that they weren't or any effort to get people to testify that they were was immaterial when he otherwise has admitted every single element of the offense, not just in his post direct statement, but in his direct testimony at trial. So, you know, I could argue that the court should remand on that point. And maybe, you know, the district court could reconsider not his sentence since he's been released, but a shorter period of supervised release. But I think that at this point, the real issue would be to reduce the special assessment. OK, let's try to save some time for a rebuttal. That's fine. We'll hear from the government now. Mr. Trusoto. Thank you, Your Honor. Robert Trusoto on behalf of the United States. May it please the court. I'd like to start with the defendant's duplicity argument and specifically with respect to his claim that the district court erred by not providing a unanimity instruction. That as an initial matter, that argument was waived because the defendant did not raise it in his opening brief. The challenge was based on the indictment. And only after the government pointed that out that it was waived did defendant then try and backdoor it in his reply brief. But even if this court were to review it under Areola, as well as Savage, this court would review it under plain error. And defendant's argument would fail there under the third and fourth prong for the reasons first. And what I'd like to focus on is the fourth prong, which relates to miscarriage of justice. And under United States v. Johnson, this is it is the defendant's burden to show that there would be a plausible basis to believe that a different result would happen if an error-free retrial occurred. And defendant cannot show that here. And I think evidence of that is the fact that he doesn't. I'm just catching up with you, counsel. But what are you saying that they waived in their opening brief? That they waived the argument that the government waived the argument that the court should have given unanimity instruction? Yes, your honor, because the opening brief, the challenge was based on the indictment, a challenge to the indictment being duplicitous. The defendant, the defendant did not. 52% of review says, it's on page three of the opening brief, whether all substantive counts should be dismissed because they're deficiently charged, both completed offenses and attempt. Okay, so I get that. That's referring to indictment. When the government failed to elect and the district court failed to give the unanimity instruction. So, and I'm pretty sure if I remember, I went through here, it seems to me that they did say, I remember you said that in your brief, that they had not alleged that, but they do talk about failure to give a unanimity. Well, your honor, there, the defendant's talking about the remedies in connection with the challenge to the indictment. No express challenge to the jury instructions was made where defendant expressly states that a unanimity instruction should have been provided with respect to the attempt and complete defenses. But even if it wasn't waived, the argument would fail under the plain error, the third and fourth prongs, because defendant cannot show that an error-free retrial would result in a more favorable outcome under Johnson, as well as other cases like Kovion Sandoval. Here you have a defendant who doesn't even challenge the sufficiency on two counts, well, three counts, but two relevant for this argument, counts two and three with respect to transporting two undocumented individuals. And as to the other eight counts that are related to this challenge, the defendant also can't overcome the burden because here there was substantial evidence to show that under multiple theories, that defendant would be liable for these charges. And I'd like to, with that, turn to the sufficiency arguments with respect to those counts to show your honors why. Starting with the- Before you go there, just let me ask you one preliminary question. Why was it necessary in this particular case, which seemed pretty straightforward, to advance all these different theories in order to gain a conviction? I mean, it seems just like this was pretty obvious, as a straight out transportation case, you could just nail him without going through all of this. Why was it- What was essential about- Was there some doubt about his role or something? Because you have all these theories that you're advocating here, just complicates the case. Your honor, there is no doubt whatsoever. Here, the defendant was liable under each of these theories. And to show you, starting with transporting and harboring- My question is, why was it necessary to advocate? I'm just trying to understand how this case shaped up this way. Why was it necessary to advocate all these theories? Well, there weren't all these theories. There was Pinkerton with respect to- Attempt, completion, transportation, harboring. Aideen and Abedi, Pinkerton. Your honor, the attempt related to the two individuals who got into his car. Defendant attempted to transport and harbor them. That was the argument below. And it's unchallenged that he attempted to transport them. He also attempted to harbor them. He, after they got into that parking lot in his car, he was going to take them to either his house or his boss's house to shield them there from further detection. That is attempted harboring. And although defendant says that testimony doesn't exist in his reply brief, it does. And it's at page 277 at the bottom of the record. With respect to Pinkerton, the government- That was the government's main theory of liability with respect to the other three undocumented individuals. And Aideen and Abedi was frankly, it was just an alternative theory to let the jury know that there was multiple ways that this could be found, that defendant could be found guilty. But the government focused on Pinkerton liability and that was the main argument we put forward in our closing argument. And under Pinkerton here, with respect to scope, I think the defendant is trying to twist around what the burden is here. Under LaPierre, this, and in other cases like Kenny, the burden here is for the government to show that not that defendant knew, but defendant had reason to know that these three- Also, to judge Paz's question, sure, it seems to me Pinkerton, Aideen, and Abedi, there's a little bit of a kitchen sink going on here and you just wanted to make sure of it. And it doesn't seem to be necessarily a big problem with that. But with regard to the attempted versus completed, I mean, it creates a delicious indictment problem. It sounds to me like you're saying, well, with regard to the two that got in his car, we think we had an attempt to transport because he never drove off. He just saw the brake lights turn on. And then, you know, they were gonna take him to his house. So there's an attempt to harbor. Okay, I hear your theory on that. And then I guess your argument would be based on either Aideen, Abedi, or Pinkerton with regard to the other three, that there was already a completed transportation. They transported him there. I suppose there could be a completed transportation with regard to the two that got in his car too on that basis. The harboring, I don't know what your attempted harboring would be for those other three, but you didn't break them apart. And that's a problem under our case law because it creates a delicious, it means the jury, some of the jury members could have thought, yeah, I think there's an attempt here. And some of the jury members could have thought that it was completed and you might not have had even an experience. So the kitchen sink approach is, I don't see it as a problem with regard to the Aideen and Abedi versus the Pinkerton because it doesn't create a delicious indictment, but it is a bit of a problem with regard to the attempt versus completed. Your Honor, you succinctly explained the different theories and how they applied to the different groups of undocumented individuals. And what I'd like to, in response, say that with respect to the unanimity instruction here with attempt versus completed, the government provided separate instructions for completed and attempt, and the government made clear in their closing argument which theory applied to which individuals. In addition, you have the fact that a general- So four of the jurors could have said, yeah, looking at that instruction, I think that there was a completed transportation using Aideen and Abedi or Pinkerton liability for the two issues and the two people that got in his car. And the other eight could have said, yeah, there was an attempt. And that's a problem, right? That's a problem under our case law. Your Honor, I agree with you, but here you have a plain error standard being applied and defendants cannot satisfy the fourth prong relating to showing a grave error that results in a miscarriage of justice. So the error you're describing in my view relates to the third prong about whether defendants' substantial rights were affected. Here you have the fourth prong where defendant has to show a different result would have occurred under Johnson. And he has the burden of showing that and he doesn't even challenge the sufficiency of the evidence on two of the counts. Maybe they couldn't have convinced 12 of either attempt or complete, right? Like, I mean, that's maybe, and that's why I think you use the kitchen sink approaches because you thought, well, I'm not sure which one of these, the brake lights came on, but the car didn't move. I'm not sure. So maybe they couldn't have convinced all 12 under one theory. That's the problem. Well, Your Honor, as each of these theories had a specific purpose with respect to, as I said, with attempting, with respect to attempting to transport, he turned the brake, the brake lights went on. He was about to pull out of that parking lot and he was about to drive these people away. With respect to harboring, the harboring occurred in the car as well. Like you said, you have completed, he had two people he harbored in his car, as well as he attempted to further harbor them by bringing them to someone else's place. The problem is, is that, and I think probably all of them were, I think not, but it's probably what we, but we can't know which members of the jury thought which was which. Like, you can't know that there was a unanimous jury on any of those, which is the problem with. And then, and then it just, Judge Emmerich's question, which you addressed, I'm not sure that like telling a jury specifically what an attempt is versus what a complete is, but tells us which one, you know, helps us with the question of what the jury concluded. And why exactly, you might explain a little bit more why that fourth prong, because I think that's, you either live or die on that fourth prong. So why does, why does that fourth prong save you? Yes, Your Honor. So under the fourth prong, the court reserves reversals for grave errors that result in a miscarriage of justice. The purpose of that prong is to avoid wasteful reversals. It goes towards ensuring that if the court is going to reverse, the retrial is going to, is most likely going to result in a different outcome. Here, defendant can't show that. He can't establish his burden of showing a plausible basis to believe a different result's going to occur if there's a retrial. Can we look at, can we look at the fact that he got consecutive sentences? So essentially like he's, you wouldn't get any better sentence here since he's not challenging the first count. So he's not going to get any worse sentence as far as time in prison could in theory get worse is what I was kind of asking here. So could we, can we take that into consideration? And can we take into consideration that, I don't know if I can or not, whether a thousand, you know, $1,100 doesn't sound like $1,100 versus $1,000. Maybe that's just because I'm a super rich federal judge or something like that. But it doesn't sound like a huge miscarriage of justice. I mean, see, I have some sympathy to your miscarriage, but I don't know how that fits within the case law. Well, your Honor, here he, defendant received concurrent sentences, not consecutive. And I apologize if I misheard you. I thought you said consecutive, but he received concurrent sentences for 18 months. And with respect to the special, the additional special assessment, these aren't multiplicitous convictions. They all relate to unique and distinct conduct. So they were properly awarded. Separate, separate special assessments were properly awarded. So you might think, well, they're only properly awarded if the jury actually could have legitimately found him guilty. And we don't know that because of the duplicious indictment. So assume for a second that I think that, you know, it's possible that the maximum he should have gotten here was 100, but he got 1,100 instead. Is that, can I, can we take any, is there, you know, are you aware of any case law that says, you know, that amount of money isn't a grave, injustice? Your Honor, I'm not, I would, well, I point the court to, I'm not aware of a case directly on point to Your Honor's question, but I point the court to the cases set in the brief of, first off, the Deval, which is a Fifth Circuit case, but that court addresses this exact issue where you had a conspiracy to commit transporting and harboring, and the defendant challenged only the special assessment because he received concurrent sentences like here. The court said because this wasn't a singular criminal act, because it related to unique and distinct conduct, the harboring count was based on different conduct from the transporting count. The court could award different special assessments. And in doing so, the court addressed, specifically addressed Sanchez-Vargas, the case defendant relies on, and says that case is extremely distinguishable and doesn't apply to these facts. And our case, respectfully, is more like Deval. I'd also distinguish defendant's case to Paula. That case is completely off point because there you have multiplicitous convictions arising out of two counts relating to charging the same firearm. So the collateral consequences there that are discussed are in connection with multiplicitous convictions relating to getting two separate counts convicted on. Here, you don't have that type of, you don't have that type of multiplicitous conviction. Under the Pinkerton liability, under the completed offense, an attempt of transporting and harboring, like we've talked about, these are all unique and distinct conduct that resulted in these convictions. So it was all properly awarded. So there's no miscarriage of justice here with respect to- So let me ask you, following up on Judge Van Dyck's question about the fourth prong, was there any chance here of juror confusion? Any potential for juror confusion here? Your Honor, I would say the answer is no because of the way the government- Because of the way the government presented its case, including laid out its closing argument to the jury, combined with the fact that we had the distinct jury instructions for attempt and for completed offenses together with the general unanimity instruction. I think this isn't- You don't think there was any potential that what could have happened is Judge Van Dyck sort of suggested one possibility is that some jurors could say, yeah, there was completed, and eight jurors could say, no, it was attempt. But where in the record- I'm sorry to interrupt. Go ahead. No, go, no. I did try to scour the record for where you argued about the attempt and fitting in with the completed. And I found one reference, but you said that you made it clear they were separate. And can you point to the record where you did that? Yes, Your Honor. So I would point to, in terms of making it clear versus attempt versus completed, the closing argument around page five, I'd say around page- I apologize. I don't know the pin set off the top of my head. But in the closing argument, I go through, and I was the one who gave the closing argument. I went through the five undocumented individuals and explained how the jury can convict as to the first two that got into his car. And then I then separate into explaining how they can convict for the three that did not get into his car. And in doing so, I was very clear with respect to transporting and harboring for the two that got into his car. The theory of liability was, he's attempting to transport them and attempting to bring them to his boss's house or his house. And then I shift to the other three undocumented individuals, to the jury in the closing. And I explain how there is, and I focus first on Pinkerton liability, because that was our main theory of liability. And I explained to the jury exactly how this was, how based on together with the expert testimony here, showing the type of broad-based conspiracy and how this worked and how these type of conspiracies involved transporting groups of undocumented individuals and then transferring them among multiple load drivers together with defendant's actions and statements. And when you look at the fact, he thought his son was going to be there. He thought his prior experience smuggling other undocumented individuals into the country for a hobby or his boss. And so, and I apologize for the long winded answer, but it was, I walked the jury through in that order to explain exactly how the theory applied to each undocumented individual. And then in the jury instructions, you combine that with the fact that we have the separate attempt and the separate completed instructions to which the defendant did not object to at trial below. And I see that my time has run. So unless the court has any further questions, I would submit with that. Okay. Thank you, counsel. You had some time for rebuttal, Mr. Johnston. Can't hear you. Thank you, your honor. And obviously I'm biased towards my client, but the long winded answer didn't create clarity for me as to what the result would be. But I think the court can look right at the government's answering brief on pages 29 through 30 to see what the clear answer is. They couldn't even tell the court whether he personally harbored or attempted to harbor those individuals. Quote, he quote, personally harbored or attempted to harbor those individuals. It wasn't even clear to the government. I think his argument would be, yeah, he personally harbored some of them or he harbored some of them under an aging embedding theory or transported and he attempted to harbor. So I'm not sure that that's as much of a got you as you think. Can I ask you, I really am curious about this. The fourth prong, the miscarriage of justice. Are you aware of what the case law says as far as, and I don't know what the case law says as far as if you've got somebody who's been sentenced concurrently and has multiple things, and one of them is not even being challenged. Does the fact that they would have multiple but wouldn't serve any more of a sentence, does that go to the grave error, miscarriage of justice prong one way or the other? Or is there, it occurs to me that one thing that might matter in that is, which I think the government's counsel talked a little bit about is the fact that having multiple convictions might be a problem for your client going forward. So is that, enlighten me both on the facts of that and if you know of any case law that talks about what counts as a miscarriage of justice in this context. Well, I'll point the court back to Steloppa. Government counsel and I have a disagreement on what it stands for. But that case cited in my brief, at least my reply brief, does deal with concurrent sentences and does it under plain error, if I'm not mistaken. So there was relief in a case where there were concurrent sentences and the quote I already gave the court earlier, I think is part of the basis for that. As for me being able to say whether $1,100 versus $100 is substantial enough under the fourth prong, I would be remiss as someone who's represented indigent defendants my whole career as a lawyer to say that that's nothing, that's insignificant or that it doesn't matter. I don't think we can say that. And I think, you know, in part, we have cases like Zalapa where relief is granted under plain error because it is hard to assess from our perch here what the effects are on the defendant. Okay. Thank you, counsel. We appreciate your arguments this morning and the matters submitted at this time.
judges: Paez, Immergut, Vandyke